NUMBER 13-01-345-CV 

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                      CORPUS CHRISTI
B
EDINBURG

 

 

BRUCE
J. CALDWELL                                                           Appellant,

 

                                                   v.

 

JOHN J. WOHMAN,
INDIVIDUALLY,

AND
AS TRUSTEE AND HIGHWAY 59, L.L.C                            Appellee.

 

                        On appeal from the
359th District Court

                              of Montgomery
County, Texas.

 

                                   O P I N I
O N

 

                       Before Justices
Dorsey,Yañez and Wittig[1]

                                   Opinion by
Justice Wittig








 

The appeal arises out
of a real estate venture that went bad. 
Appellant, Bruce J. Caldwell, Jr., 
together with appellee, John J. Wohman, and another man bought an
acreage tract on U.S. Highway 59 in Montgomery County in 1971.  The tract was lost  in a tax sale in 1991.  Litigation ensued in 1998, initiated by
Caldwell, who is an attorney.   In a
bench trial, District Judge James Keeshan ruled against Caldwell and in favor
of both Wohman and an entity he formed in 1994 called Highway 59, L.L.C., also
an appellee.

 We will examine appellant=s four issues.  He complains of an implicit finding against
him under the applicable statute of 
limitations, another implicit finding by the trial court that the trust
had terminated, and further implicit findings by the trial court that there was
no breach of fiduciary duty or fraud by appellees.  We will affirm.

     Background








In 1971, appellant
Caldwell, appellee Wohman and Bennett J. Robert, Jr.[2]
entered into a so-called Atrust@ agreement for the
joint ownership of 66.260 acres of land in Montgomery County.  Attorney Caldwell drafted the contract, which
nominated Wohman as Atrustee,@ to serve without
compensation and without personal liability. 
All three owners had the right to use the property, to sell the property,
make payments, pay costs and expenses. 
Aside from holding bare legal title, Wohman was given some management
responsibility, but no other duties. 
Each owner was responsible for their proportional obligations to make
payments and pay taxes.  The group failed
to pay real estate taxes in the amount of $52,928.29 accruing in 1988.  A tax suit was brought in 1989 and resulted
in a 1991 judgment against the group of owners. 
Caldwell  acted as defense
attorney for the owners.  Judicial
foreclosure was ordered and occurred August 6, 1991.

The evidence reveals
it was Caldwell who could not pay his share of the taxes.  He attempted to borrow funds to pay his part
of the taxes.  Partially because of a
deed of trust lien he had placed upon the 66-acre tract (in breach of the
agreement), Caldwell was not able to secure credit financing.  TexasBanc refused to subordinate their lien
created by Caldwell.








After the judicial
foreclosure, the property was conveyed to third parties Eddy Reichmann and Lee Jurecka,
by quitclaim deed on November 14, 1991. 
By this point the only real asset of the trust was lost, but a two year
redemption right remained.  See Tex. Tax Code Ann. ' 23.21 (Vernon
2001).  The right of redemption was not
exercised by the trust, nor was there a showing that the original three trust
members were ever ready, willing and able to redeem the property.  Approximately $140,000 would have been
required to redeem the property.  Wohman
indicated there were several conversations with Caldwell and Robert about the
possibility of redeeming the property. 
At some point, Caldwell demanded to be bought out.  However, the three former owners were neither
agreeable nor able to redeem the property. 
Then in August 1993, appellee Wohman entered into an earnest money
contract with Reichmann and Jurecka, proposing to close on the tract after the
redemption period ended.  Appellee
actually closed on the property, bought in the name of his new company, Highway
59, L.L.C., in March 1994.  Appellant
filed suit November 12, 1998.  His action
was to quiet title, for fraud, conspiracy to defraud,  imposition of a constructive trust. and
breach of a confidential or fiduciary duty.

Standard
of Review

 The record does not contain findings of fact
and conclusions of law.  In a nonjury
trial, where findings of fact and conclusions of law are neither filed nor
timely requested, it is implied that the trial court made all necessary
findings to support its judgment.  
Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex.1992)
(citing  Roberson v. Robinson, 768
S.W.2d 280, 281 (Tex.1989)).  When, as in
this case, a statement of facts is brought forward, these implied findings may
be challenged by factual or legal sufficiency points, the same as jury findings
or a trial court's findings of fact.  Heine,
835 S.W.2d at 84; State v. One (1) Residence Located at 1204 North 12th
Street, Alamo, Tex., 907 S.W.2d 644, 645 (Tex. App.BCorpus Christi 1995, no
writ).  If the evidence supports the
implied findings, we must uphold the judgment of the trial court on any theory
of law applicable to the case.  In re
W.E.R., 669 S.W.2d 716, 717 (Tex.1984); Lassiter v. Bliss, 559
S.W.2d 353, 358 (Tex.1977).








When a party attacks
the legal sufficiency of an adverse finding on an issue on which he has the
burden of proof, he must demonstrate on appeal that the evidence establishes,
as a matter of law, all vital facts in support of the issue.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241-42 (Tex. 2001) (citations omitted).  
In reviewing a matter of law challenge, the reviewing court must first
examine the record for evidence that supports the finding, while ignoring all
evidence to the contrary.  Id.  If there is no evidence to support the
finding, then the reviewing court will examine the entire record to determine
if the contrary proposition is established as a matter of law.  Id. 
And the issue should be sustained only if the contrary proposition is
conclusively established.  Id.  Here, Caldwell  had the burden of proof on his common law
claims and once appellees showed those claims were outside the statute of
limitations, appellant again had the burden of proof.  Appellant did not attack the factual
sufficiency of the court=s  findings.

Analysis


Appellant first
attacks the trial court=s implied finding that
his fraud and breach of fiduciary duty claims were time barred.  Appellees pled, and the trial court
apparently found in favor of appellee, on the applicable four-year statute of
limitations.  See Tex. Civ. Prac. & Rem. Code Ann. ' 16.004 (Vernon Supp.
2002).  This section provides in
pertinent part:

(a) A person must
bring suit on the following actions not later than four years after the day the
cause of action accrues: 

 

. . .

 

(4)
fraud;  or

 

(5)
breach of fiduciary duty.

 








Id.  Appellant initially argues that appellee
Wohman never repudiated the trust, nor was the repudiation known to appellant,
citing Langford v Hamburger, 417 S.W.2d 438, 445 (Tex. App.BFort Worth 1967, writ
ref=d n.r.e.).  However, Langford involved three
written on-going family trusts providing for monthly and annual reporting.  Id. at 441.  The trust at issue in this case was not
on-going, and as we explain below, terminated at least by 1993.  Langford only cites to A.L.R.2d as the
source of this particular repudiation rule. 
Id. at 445.  Appellant also
cites  Pierce v. Gillespie, 761
S.W.2d 390, 396 (Tex. App.BCorpus Christi 1988,
no writ).  There, we held because of a
fiduciary relationship,  trustees could
not adversely possess land without repudiating the trust and giving each beneficiary
notice of the repudiation.  Id.
(citing Smith v. Dean, 240 S.W.2d 789, 791 (Tex. Civ. App.BWaco 1951, no writ))
(when there are tenants in common, it is well-settled that limitations do not
begin to run against the beneficiary of a trust in favor of the trustee until
the latter has repudiated the trust and the beneficiary has had notice of the
repudiation).  This principle was
well-established in Texas jurisprudence, that one who holds title to the land
as a trustee for the benefit of a partnership, would not become adverse to the
heirs of the deceased member or his personal representative until he repudiated
the trust.  McLean v. Hargrove,
139 Tex. 236, 162 S.W.2d 954, 958 (1942). 
This principle of repudiation is inapplicable.  Appellant was no longer a co-owner of the
land and the trust had terminated.








Appellant
fails to explain why his claims are not barred by limitations.  He pled appellee wrongfully allowed the
property to be foreclosed upon.  This
occurred in 1989 and appellant was the attorney on the matter.  Appellant claimed appellees unlawfully
possessed the land for seven years before suit was filed.  In his pleadings appellant claimed appellees
began to defraud him beginning about August 1, 1991.  Appellant alleged by his pleadings, a
constructive trust on the tract held by 
appellees equaling APlaintiff=s former interest in
the Trust.@  This is a telling judicial admission, because
indeed the res of the trust ended with judicial foreclosure in August
1991.  Only an equitable right of
redemption remained until November 1993. 
Suit on appellant=s claims were not
brought until November 12, 1998.  The
only claim that could possibly survive the four-year statute of limitation was
a 1993 alleged breach of confidential relationship and fiduciary duties, i.e.,
when appellee Wohman entered into an earnest money contract executed in August
1993 while the right of redemption remained.  
Unfortunately, appellant also alleged this was a continuation of older
breaches.  Appellant alleged Wohman
breached his confidential relationship/fiduciary duties by allowing foreclosure
(in 1991), AThereafter, Defendant
continued to breach his confidential relationship and fiduciary duties. . . .@ by putting his
individual interests ahead of appellant, failing to redeem, and conspiring with
59 L.L.C. to purchase the tract.  By his
pleadings, appellant places the inception of most, if not all, his claims, more
than four years before he filed suit in 1998. 
Further, appellant does not cite to any authority that requires
repudiation of a trust that no longer exists, nor do we find any such
authority.  Appellant judicially admitted
he no longer had an interest in the trust, and as a matter of law, the last
equitable right of redemption expired (as also admitted by appellant) no later
than November 14, 1993.[3]








While
appellant argues the Adiscovery rule@ on appeal,  no pleadings support this theory.  In response to a limitations defense,
appellant was required to plead the discovery rule as an avoidance.  Woods v. William M. Mercer, Inc., 769
S.W.2d 515, 518 (Tex. 1988).  This is
true even in a case of fraud.  Id.
at 517.  Appellant was required to plead,
prove and secure a finding by the trial court on this matter of avoidance.  Id. at 518.  Because appellant failed to even meet the
threshold requirement of pleading, his argument fails by waiver.  Id. 
We overrule appellant=s issue on limitations
and sustain the trial court=s implied finding
barring all of appellant=s claims.








Even
if appellant survived the limitations defense, his pleadings and proof below,
and argument before us, principally rely upon the establishment of a
constructive trust.  Although appellant
initially sought damages in addition to the imposition of a constructive trust,
his appeal abandons this claim and seeks only a restoration of 31% ownership in
the property or a constructive trust.[4]  The application of a resulting trust is an
equitable remedy, Richardson v. Laney, 911 S.W.2d 489, 493 (Tex. App.BTexarkana 1995, no
writ) (citing Kostelnik v. Roberts, 680 S.W.2d 532 (Tex. App.BCorpus Christi 1984,
writ ref'd n.r.e.)) (transfers of property to create eligibility for Medicaid
benefits made the transferring party ineligible to exercise a constructive
trust because of the lack of clean hands). 
Whether a party has come into court with clean hands is a matter for the
sound discretion of the court.  Jackson
Law Office, P.C. v. Chappell, 37 S.W.3d 15, 27, (Tex. App.BTyler 2000, pet.
denied).  Appellant caused, in whole or
in part, the underlying default.  Appellant failed to pay his portion of taxes
resulting in the judicial foreclosure. 
The foreclosure resulted from a trial in which appellant was the
attorney.  Appellant, solely for his own
benefit,  filed an intervening suit
against Reichmann and Jurecka, (the tax sale purchasers) which apparently was
unsuccessful.  The evidence showed
appellant failed or refused to participate in attempts at redemption.  Appellant breached the trust agreement by
placing an unauthorized lien upon the property.   He who seeks equity must do equity and he
who comes into equity must come with clean hands.[5]   Bush v. Gaffney, 84 S.W.2d 759, 764
(Tex. Civ. App.BSan Antonio 1935, no
writ).  Thus, more than legally
sufficient evidence supports the trial court=s implicit finding denying appellant=s only equitable
remedy.  








 

 

Appellant=s issues are
overruled.  The judgment of the trial
court is affirmed.

 

 

 

 

Don Wittig

Justice

 

Do not Publish.

Tex. R. App. P. 47.3(b).

 

Opinion
delivered and filed

this 27th day
of June, 2002.











[1]  Retired Justice Don Wittig assigned to this
Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998)





[2]  Robert is not a party to the case.





[3]  Upon termination as to a specific property, a
trustee is authorized only to "wind up the affairs of the trust and to
make distribution of the assets to the appropriate beneficiaries."  Tex.
Prop. Code Ann. ' 112.052
(Vernon 1995);  Nowlin v. Frost Na=tl
Bank, 908 S.W.2d 283, 289 (Tex. App.BHouston
[1st Dist.] 1995, no writ).  Here, there
was nothing left to wind up or distribute.





[4]  See appellants brief page 18.  Because appellant lost all legal claim to the
property through the judicial foreclosure, the only theory pled that could
restore the property would have been a constructive or resulting trust.  In any event, damages incurred by virtue of
breach of fiduciary duty are within the sound discretion of the trial
court.  See  Burrow v. Arce,  997 S.W.2d 229, 246 (Tex. 1999) (the court
must determine, based on the factors set out, whether the attorney's conduct
was a clear and serious breach of duty to his client and whether any of the
attorney's compensation should be forfeited, and if so, what amount).  Given appellant=s
own breach of trust, the trial court would be justified in awarding no damages,
even if it had found some fiduciary violation by appellee.  (In this appeal, we assume, but  do not reach, the issues of whether there was
in fact and law a trust, or whether there was the special relationship
necessary to impose fiduciary responsibilities on appellee, who served, after
all, without compensation and without personal liability.)  





[5]  The same equitable principles apply to
appellant=s fraud
claim.  See Chappell, 37 S.W.3d at
27.  (Normally, fraud vitiates all
transactions; however, there are maxims of equity, which may apply to negate
the application of equity.)